Thank you. Good morning, Justices. May it please the Court. My name is Michael Haman, and I represent the defendant, Mr. Collins, City of Coeur D'Alene in this matter. And I want to begin with the recognition of the cornerstone of the case that is before you, as the trial court and the proceeding judge, Justice Boyle, recognized in this memorandum of decision in the order of the post-trial motions, that this is not an action about whether the City of Coeur D'Alene had a reason to investigate the appellee, Dan Dixon, for conduct of becoming an officer. Rather, it is a question about how it conducted the investigation, which included, as you well know, two polygraphs, and the conclusions that the City of Coeur D'Alene reached following that investigation. And with that recognition, the City of Coeur D'Alene submits that the trial court, with all due respect, abuses discretion in its evidentiary ruling with regard to the polygraphs, resulting in a verdict on all things federal and state. Now, I understand that this is an overburden, but we submit that. Well, in fact, if I look at Benevitas Benevitas, this is an abuse of discretion case, right, Counselor? That's correct. The evidence shows that. That's the standard of your hearing? Correct. And if I look at Benevitas Benevitas, it says the trial court will rarely abuse its discretion by refusing to admit a polygraph evidence, even for a limited purpose and under limited conditions. That's true. And this is a limited purpose or limited conditions, and the trial court is there. They're having a chance to look at this, decide what to do as to this particular situation. And you're saying that's totally illogical, totally out of any precept for what the trial court could have thought. What I'm suggesting is that the abuse of discretion occurred when we considered the United States… What does abuse of discretion mean? What does the trial court have to be in order to abuse its discretion? A misunderstanding of the law, a misapplication of the breadth of the law, and as the United States… Totally illogical. And as the United States Supreme Court recently said in Fox versus Vice, that the trial court commits an abuse of discretion because it has to recognize the rules of the game. And if it doesn't call the rules of the game by the right rules and abuse of discretion occurs, we submit that the trial court in this instance handcuffed the city of Portland by allowing the appellee to introduce negative inferences about the scope and conduct of the cornerstone of this case, the investigation, allowed the appellee to introduce misleading and untruthful testimony regarding the scope of this investigation, but failed to conduct a proper analysis of the rules regarding polygraph evidence and its admissibility, failed to conduct a proper analysis of Rule 608B of the Federal Rules of Evidence regarding impeachment by contradiction, and in doing so, prevented the city of Portland from introducing evidence that would impeach the testimony of an expert, an expert who has a heightened aura of credibility and reliability. Do you ever argue prejudice in your brief interplay besides error? I'm sorry. Do you ever argue prejudice in your argument about this rather than just error? What is the prejudice? The prejudice is twofold. First, the failure to allow, well, frankly, when we backed up the polygraph evidence itself, prohibitive values would have outweighed the prejudicial decision of allowing misleading and untruthful testimony. Is that in your brief? I believe it's in the record. Well, I mean, I read through your brief. First thing I thought, well, this is abuse of discretion. I'm pretty big on the standard of review. And then I read Benavides, and I say it's a rarely abuse of discretion. And then I look at, where's the prejudice argument in the brief? I'm not really anxious about error. Where's the prejudice? If it isn't argued in the brief, then we don't have any prejudice in front of us. That's all I'm trying to suggest. Well, we submitted that not only did the court, was the trial court required to conduct a 403 analysis to determine prejudice, which we objected to. See, that's November 3rd, 2011, the motion of the hearing, which is in the record before the court. It may not be exactly in the brief, but it's cited in the record, which is cited in the brief. But the prejudice occurred because the prohibitive value of the contradictory evidence outweighed the prejudicial effect. Moreover, there would be no prejudice by allowing the polygraph evidence, not the results, as the court is well aware of the operative fact exception, but to show that polygraph is the proper investigatory tool and to rebut the negative inferences and the misleading and untruthful testimony that came in. And that would not have been prejudiced when we did ask the trial court for permission to introduce polygraph evidence as an investigatory tool with the limiting instructions, recognizing the results likely would not come in. That would have been only prejudicial. But allowing no polygraph evidence to come in following the misleading and untruthful testimony became prejudicial. And we submitted that polygraph evidence at that time was more appropriate to rebut the negative and misleading attacks. Well, the problem is in Benavidez-Benavidez, we looked at polygraph and opened the door but said we're not opening it very wide. And we really are giving the trial courts a great deal of latitude because this is such powerful evidence that it can hijack the fact-finding function of the jury. And that's exactly what the judge in this case, Judge Boyle, said. It looks to me like he did the proper analysis. He looked at the probative value and he said it has probative value and he got it right. But his prejudicial effects outweigh that. So in reviewing that, we're not going to sit in his shoes and re-weigh the evidence. What's wrong legally with his analysis? In sitting in his shoes, I would suggest that he would also consider first and foremost that polygraph is not per se admissible as Judge Boyle recognized in the November 2010 motion limiting. He failed to recognize that there is the operative fact exception. He failed to recognize that in 2009, this court, the Ninth Circuit in U.S. v. Deputy, Dreysen out of Montana, stated that not only is polygraph evidence admissible as operative fact but it's admissible to rebut native inferences, which is consistent with the Third Circuit, the Tenth Circuit, and the Eleventh Circuit. But not always admissible. Not always. You still have to do the weighing. You do. He hadn't done any weighing. He said polygraph evidence sort of comes in. Your case is a lot better. But in this case, he basically, at least he seems to me, that he made the appropriate findings on prejudice and broke it down. I think that the weighing requires more than just a 403 analysis, and I think it requires What does it require then? The 608B analysis as well. That had to look at whether or not impeachment by contradiction exception, 608B, is permissible in this regard. And the reason why that is so important is the court, this court, in fact, is recognized as leading the Steele versus the United States v. Steele matter, is that we will allow impeachment by contradiction because we don't want perjured testimony or untruthful testimony to affect and taint the outcome of a verdict. I guess I'm still not quite clear on the prejudice. If this had been admitted, what would your argument have been to the jury based on? Well, this being admitted, are you talking about the result or just the fact that it was provided? I thought you wanted the result. We were only asking for the fact that the polygraph as an investigatory tool would have been admitted. So what would you have argued to the jury? We would have argued that the negative inferences drawn by the plaintiff regarding the length of the exam without rebuttal during the trial was because of the two polygraphs that were submitted. It was not a win-shun. It was delayed because he failed the polygraph. He wanted a second bite of the apple. He failed it again. We would have rebutted the negative inference that was drawn that there was no independent agency brought into this investigation, which was not true. They knew that two independent agencies were brought in to conduct the polygraph examinations. We would have rebutted. Well, wasn't the theory a little bit different on that? The theory was you should bring in some independent examiners to conduct the entire investigation, not to conduct the task. Wasn't that the plaintiff's theory? Well, they argued at one point that no independent agency was considered and brought in to conduct the internal investigation. And I think that was misleading to the jury when, in fact, there were two independent agencies that were brought in to conduct the polygraph examinations. We also would have had another argument and negative inference they drew, just like in the deputy matter, that there was a lack of interviews of witnesses. But the reason why the interviews stopped is because he failed to do polygraphs. There was no reason to continue to go on. But this, again, goes back to your question, Justice Rodin, that this is an investigatory tool to put the argument to the jury through cross-examination of their expert witness, Chief Skates, that as an investigatory tool, this can draw out an investigation. It can result in stopping examinations of various witnesses. And more importantly, we could have asked it as a hypothetical. Can the polygraphs result in good cause for discipline? Because Chief Skates testified that he reviewed the entire investigatory file, which included the two failed polygraphs, and then testified in peer-reviewed and critical testimony that there was no evidence of good cause to support the discipline review. So you wanted to get it in so you could apply it and pluck the tests? Not necessarily the results. No, that you can pluck. I mean, the only reason would be that you were applying that he failed the test, even if he didn't have the results, and that's what you wanted to do. Obviously, we wanted the results. Yes. But I recognize that that wasn't going to occur under the per se exclusionary rule, and with the exception that was adopted by this Court in the 80s, in Brown v. Darcy and U.S. v. Bowen, that polygraph evidence can come in as an operative fact to show the conduct and propriety of the investigation. And when we do go back to the cornerstone of this case, the attack was on the propriety of the investigation. We could have shown that this was a proper investigatory tool. We could have used it to rebut the negative inferences. This jury concluded two factors, two primary factors of the numerous issues. One, that there was a finding of arbitrary conduct. Well, the only testimony of arbitrary conduct that came in, absent the self-serving testimony, was from Chief Skates. Impeachment by contradiction, again. We should have been at least allowed to discuss with him the proper investigatory tools and whether the city dotted its I's and crossed its T's. And maybe in that instance there would not have been arbitrary finding. The other finding by this jury was there was an absence of good cause, which supported the state claims of breach of contract. The only evidence that came in by a witness, other than the self-serving testimony, was by Chief Skates, that there was no good cause. That simply was not true. He knew that it was not true. Yet the plaintiff, the appellees, took that, ran with it. In fact, I want to back up for a moment. At the October 3, 2011, motion to limit, right before this trial, I specifically asked Judge Boyle whether or not the appellees would be permitted to draw the negative inferences. I filed a motion to limit in this regard. Judge Boyle specifically said, and it is in the record, I am not going to allow evidence in polygraph unless the door is opened. We submit this door was wide open, and Judge Boyle abused his discretion by failing to recognize that he had admonished counsel, and then when the door was opened, did not conduct a proper 608B analysis, did not consider the prejudicial effect of the misdemeanor testimony, which outweighed the charge of negligence. All right. I'm going to reserve some time for a moment. Two minutes. May it please the Court, my name is Larry Pack, and my co-counsel is William Murphy, and together we represent the appellees in this matter, Dan and Heidi Dixon. This case, the central thrust of this case, is about why the appellant's arbitrary branding of a 17-year career police officer as a liar, cheater, harasser, intimidator, and thief violated the appellee's constitutionally protected liberty interest in pursuing work in his chosen field. Well, that's what you argue to the jury. What are you going to argue to us? Well, on that issue? Well, on the various errors that your adversary says the Court made. Well, maybe you could start with why Judge Boyle even allowed you to go to the jury for deliberate indifference. Because, I mean, as I understand the rule, the general rule is that we've got to have a pattern of constitutional violations by a municipality showing deliberate indifference to constitutional rights. There's no pattern here. What we're really talking about here, wouldn't you agree, is a single incident theory? That is correct. And the single incident theory, the best we can come up with single incident theory, would be in the case of Connick? That's correct. And Connick didn't really say what single incident is. Connick really said, well, hypothesizing what one might be, it ought to be patently terrible and totally indifference. I mean, here we have one incident. We have a chief who is in charge of this department. And this chief has been at it for a long time. And we have one other person who has anything to do with this. And on this particular situation, Judge Boyle allows the jury to cogitate about whether this is enough to be patently unreasonable. That's correct. I'm having a tough time understanding how that could be. How that could ever go to the jury. Because I didn't find a case. I read Canton v. Harris. They tell me what proof a single incident of unconstitutional activity was. I read City of Oklahoma v. Tuttle. I read all of these, and I'm still having a tough time understanding how Judge Boyle thought Connick v. Thompson would allow this case to get to the jury. Well, it went to the jury based on a single incident theory, and that's been associated with it. And Judge Boyle gave them a jury instruction based on that, correct? That is correct. And so, therefore, he had to make a question of law determination that this was appropriate. And you're saying that this reaches the standards that we have in Connick of single incident theory, narrow range of circumstances? Well, we would assert, Your Honor, that the facts in this case drove a truck through that standard. And by that I mean, Your Honor, that in this case there wasn't just inadequate training. There was a complete absence of training. Well, just a minute. Connick doesn't say you've got to go be trained. Connick says you can have some training on the job. And so there is some training to be said about what the chief had on the job, what others may have had on the job, which the testimony regarding that, Your Honor, was that they had absolutely no training in how to conduct an internal investigation on how to protect the constitutional rights of officers, constitutional rights being their property interest and their liberty interest. These are police officers, and they are in the business of doing investigations, I think. That's true. So how does that help your case? Well, in this case, the evidence presented at trial was that the particular officer who did this investigation, who we certainly argue never should have done the investigation due to bias, but putting that issue aside for a moment, he had no training whatsoever, formal or informal, on how to conduct an internal investigation. His testimony was that the way he did it is he would go through the shelf that had notebooks of prior investigations, and he would pull that notebook and sort of try to follow that. But he also testified he couldn't recall one seminar, he couldn't recall one schooling, he couldn't recall any formal training, any on-the-job training on how to conduct a proper internal investigation. And we submit that's not a surprise given the fact that the former chief, Chief Carpenter, testified that she also didn't have any training on how to conduct a proper internal investigation. Well, the problem that I have with this is this is a single incident. It's a single incident which Coeur d'Alene, one of Idaho's prominent cities, is now being suggested is not enough to make the single incident theory as articulated in Connick. And how many other little cities in Idaho would not have this ability or would not have this training? That's why we have a pattern when it comes to municipalities. That's why we have the higher standard as it comes to municipalities. So that one such circumstance where guys have been on the job and doing what they have to do, it seems a little uneasy when there's never been a case to articulate when this jury instruction should have been given that Judge Boyle can leap to the idea that Connick will absolutely destroy any problem with giving this jury instruction to the jury. Well, Connick was decided very near, actually just right before this trial. And it was a 2011 decision. And the jury instruction that was given came right from Lane and Connick. So if Connell, I appreciate the jury instruction came from the language, but the bottom line is before you even give the jury instruction, you've got to suggest that it ought to be given. First of all, we have municipal liability. We don't have an exception for municipal liability at all in this area. Then we have that municipal liability should only come when there's a series of incidents that would suggest, because what we're really talking about is deliberate indifference. And then after that, we're putting the exception to the exception. So we've got an exception to the exception to the exception. And we're saying on this evidence, we're going to give this jury instruction. And no case suggesting that this is appropriate for that. Just jumping to that conclusion based on what I thought was dicta in Connick. So that's my worry about this. Where did he ever get the idea that that instruction ought to be given? Well, first of all, we pled in our complaint years prior that this was the result of deliberate indifference. This was the result of inadequate training. We actually had thought that we, perhaps through discovery, would uncover evidence that would establish that there was more to a pattern. But regardless of that, then along comes Connick and very clearly says single incident is enough. How was this raised before the judge, before the trial court? The question of whether or not the Connick instruction should have been given. When was the issue raised? When should it be given? No, when was it in this case? When did the parties argue that it should not have been given? Well, I mean, we had the instruction conference. Right. At the end of trial. Right. And this was objected to at that point? I did not object to it. No, of course not. No, no. Of course not. The other side. I'm trying to figure out. I actually did the indisputable objection. I don't recall an objection to that instruction. I'm sure your counsel could. I thought there was an objection and also there were two motions. Also what? There were two motions. A motion for judgment as a matter of law and a motion afterwards. And all about whether this really ought to be conduct that you ought to get damages for. Well, this was, there was a Rule 50, I think, on every single. Well, that doesn't make any difference on every single. I've got to deal with the one we've got. It isn't as if it wasn't in front of Judge Boyle. It was clearly in front of Judge Boyle. And it isn't as if they waived any opportunity to make this objection. What we're really working at right here is whether this meets the exception to the exception to the exception outlined in the dicta of Conner. And, therefore, we give a jury instruction. That's what we're really looking at, right? Yes, that's correct. And, frankly, the thing that worries me the most about this is that I'm supposed to make sure that this doesn't effectively impose respondeat superior liability, which it seems to be obvious that it imposes in this situation. Well, that could be argued. However, I believe that Judge Boyle squarely took on the Connick decision, clearly found the single-incident jury, which we argued at trial. And the objection really is to the amount of evidence that was presented at the jury instruction. Right. And when the Supreme Court says something, you're supposed to take it seriously. That's the way we were taught here. So you had my all of something you had to prepare. I'm sure I had some professors back there telling me to smile. So you had three theories in this case, right? Pardon? You had three theories that went to the jury? We had three what? Theories that went to the jury. What theories did you have on? No liability. On just deliberate infringement or what else? No, you had contract theory, right? Yes. And you had substantive due process theory. Yes. And you had your training theory. Yes. Did you segregate the damages? Did we what? Were the damages segregated among the theories? Well, there was a special verdict form that I believe was somewhere in the neighborhood of eight pages. And the damages were not segregated as to each theory. Right. So let's say one theory is knocked out, what happens to your case? The court then has to look to determine whether or not the case would stand on the other theories. It was certainly not a reversal per se. But you're suggesting the jury did not find damages as a result of the breach of contract claim? No, I think they all went hand in hand. The special verdict form asks them what are the economic damages for constructive discharge, for the liberty interest claim, for the breach of contract claim, which clearly was proven. And any one of those damages, as we pointed out at the end of our brief, excuse me, any one of those claims would result in essentially the same damages to the plaintiff, Kelly. Let's turn to the polygraph question for a minute. I mean, I understand the theory. And obviously, I'm the son of Kennedy. There's going to be this panel. And express great reservations about polygraph evidence. But in this case, basically, if you boil things down, the city is essentially telling us, look, we really fired him because he flunked the two polygraph tests. I mean, that was the tipping point. And we didn't get to talk about the tipping point. We didn't get to talk about the real reason that we believe that there was something amiss. And therefore, we were arguing our case with two hands tied behind our back, and we couldn't show a good cause. So why isn't that enough when you put in your evidence about the inadequacy of the investigation for them to say, all right, you've opened the door, and now we get to explain that we, in fact, did more than the jury was allowed to believe? Well, the answer to that question starts with what happened before the polygraphs were ever even administered. For instance, when Judge Boyle had the motion eliminated before him, he had an affidavit from myself and declarations from the appellee that attached many, many pages where we had contacted the appellant and told them, number one, look, before you do these polygraphs, understand they are not admissible in the Ninth Circuit. And if you undertake this, you better darn well have other evidence. And we also, in those portions of the record, we also tried to work out a very careful plan on how polygraphs could be administered, how they should be administered fairly. We had a plan worked out, and that plan was canceled by the chief. He wanted to do it his way, even though the city attorney at that time agreed with us. And so we knew from the start we weren't going to get a fair polygraph. So that's a photograph for cross-examination? Well, but Judge Boyle had all of this before him at the time he ruled on the motion eliminating. So I think it's also important to note that Judge Boyle very carefully, and I think he heard this issue three or four times in motions, and on each occasion he absolutely rested on Benavides with the position, Judge, that just even the mere mention of the word polygraph under 403 would be so prejudicial that the jury would not be doing their function as fact-finders. And as you know, Judge, having authored Benavides, that discretion is given to the trial judge. Judge Boyle heard all the arguments on polygraph ad nauseum, and there's frankly a mountain of briefing on that, a mountain of affidavits. We never got to the DACA hearing because the judge agreed with us that just the mere mention of polygraph, just the word, would immediately take the function, the fact-finding function, away from the jury. That can't happen, and this court has consistently protected that goal. But the problem that I saw about the expert testimony and what the city has brought up, which is of some worry to me, is that this isn't just general objection here. We had expert testimony, and in the expert testimony, States testified that he reviewed the internal investigation report and found no good cause to terminate the claim. Now, when he testifies as an expert, he's reviewed this report, he's done what he has to do. Why doesn't that open the door? At that point, we're in a different situation than the normal discretionary decision. That's what the city's arguing. We can't just talk about 403 anymore. We've got to talk about did they open the door such that the testimony or this evidence should come in. My worry is that Judge Boyle didn't concentrate on it in his decision. If he did, where did he? Well, the first area where I think he concentrated was that when you look at the end of this case testimony on redirect, I specifically asked him, what did you review in the file? What specifically did you review? Because we had that general statement from a witness that said I reviewed the whole file. So I broke it down item by item. And he listed, I looked at these exhibits, I looked at the time cards, I looked at the time records, I looked at the witness statements. He went through one by one by one. And so the jury knew what he reviewed. The second point I'd make on that, though, is we all have to play by the rules in court. We don't get to say I'm somehow going to rely on evidence that I already know has been ruled inadmissible and try to backdoor that in the event this doesn't go well for us. Skates, who is the former police chief of Coeur d'Alene for 35 years, Judge, I see my time is up. Thank you. And he has seen many internals. He is familiar with how things should be done. And he testified that this particular internal investigation based on what he reviewed, and he could only talk about what the judge had allowed him to talk about. You can't talk about evidence that's inadmissible. So he talked specifically about what he reviewed, and it was a mountain. This was 1,500 pages of documents that supposedly showed Dan Nixon, the appellee, had done all these horrible things. The fact of the matter was this is a case where they simply didn't have the evidence. And the jury saw through it after eight days of hearing this case, and it was a unanimous verdict. The verdict should be uphold. We ask that you uphold, Judge. Thank you, Counselor. And by the way, I used the term flunked rhetorically. I know you would take issue with how the results came out of the test. Oh, very much so. You were kind enough not to say you didn't say. And that's in the record as well. Just for the benefit of the audience. Found to have been deceptive is good enough for me. Briefly, Justices, the appellees used the shield of protection as a sword in this case. They knew that polygraph could never come in, and they used it as a sword time and time again from opening to direct into closing, suggesting a witch hunt because it went so long. Went wrong again because he failed one or was not deceptive on one, and then he wanted another right of the appellant. It's very important to know that when he signed on to become an officer at the city court, he knew that he'd be subjected to polygraph examinations as an investigatory tool. He agreed to it when he became an officer. So it wasn't put on him by surprise. He wasn't forced into this. He had to do it. It's a legitimate tool in employment, and this goes to Justice Smith's comment that about the deliberative evidence testing. There is no case in the United States where single exception or single incident theory has ever been applied in employment law context such as this. The single incident theory states that there has to be a recurring situation where in the absence of training, it is obvious that a constitutional violation could occur. This wasn't a recurring situation. By their own argument, this is recurring because of the insufficient training. The comic also said that insufficient training isn't enough. There has to be a complete absence of training. The mere fact that these officers were post-certified suggests that they were adequately trained. So if you win on the training issue, that really doesn't change the judgment, does it? I believe it does because the jury was allowed to consider the arbitrary conduct and the repeated inferences of inadequate training and supervision, or as we just told you, the lack and complete absence of training and supervision, which they knew was not true because of the post-certification, and that tainted the verdict's decision. This jury was out for less than two hours, taking that time to read the instructions. Well, of course, you know, the evidence was admissible. There's no question about that. The question is whether the jury should have been allowed to consider this theory. Well, we submitted it should not have been allowed to consider the deliberate indifference. And moreover, we filed a directed verdict on this. But I think you ought to listen very carefully to my colleague's question because it's the same question I have. I can go all the way I want to go on deliberate indifference, but if I go all the way on deliberate indifference, does that really have anything to do with the substantive due process as it relates to that which has been argued in Manquist, or is deliberate indifference a different theory? I believe it's a different theory. But to the extent of substantive due process in Manquist, there has to be a finding of arbitrary conduct. Right, but they argue arbitrary conduct for different reasons. It wasn't just the failure of training. They were relying on the chief's testimony didn't read the, you know, and they had to rely on documents and et cetera, et cetera. I mean, there's a lot of different facts to support that theory. I mean, the question I could ask is, let's say you win on training. Does it really make a difference on the judgment when the jury has not segregated damages as falling from the different theories? I believe it does because the failure to segregate damage, we don't know if the jury was focused on the state law claims or the federal claims. We'll never know that. But what case says when you have a general verdict on damages that you strike one theory that the damage theory falls? I'm not aware of a case in that circuit that says that. Thank you. Very good. Thank you both for your arguments. A very interesting and important case. And we thank you for your briefing as well. And we will take a brief pause before proceeding.
judges: Schroeder, Thomas, Smith